UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DAWN WALLACE

VERSUS

THE BOARD OF SUPERVISORS
FOR THE UNIVERSITY OF LOUISIANA
SYSTEM (SOUTHEASTERN LOUISIANA
UNIVERSITY)

CIVIL ACTION

NO. 14-657-SDD-RLB

## RULING

Before the Court is the Board of Supervisors for the University of Louisiana System's (hereinafter "Defendant" or "Board") *Motion to Dismiss for Improper Venue*.[1] In response, Dawn Wallace (hereinafter "Plaintiff" or "Wallace") has filed a *Memorandum in Opposition*[2] to which the Board filed a *Reply*.[3] Wallace subsequently filed a *Surreply*.[4] For the following reasons, the Board's *motion* shall be denied.

## I. BACKGROUND

Throughout her tenure as a professor at Southeastern Louisiana University's ("Southeastern") College of Business ("COB"), Dr. Dawn Wallace contends that her employer has discriminated against her on the basis of her gender and has retaliated against her in violation of Title VII and the Equal Pay Act of 1963 ("EPA"). In support of her gender discrimination claims, Wallace alleges that as a female professor in the COB, her salary is much less than her male colleagues. Wallace also alleges that she experienced sexual harassment at the hands of her Dean, Randy Settoon. Wallace raised her concerns with Southeastern's EEO Compliance Officer, Gene Pregeant, by

---
[1] Rec. Doc. 4.
[2] Rec. Doc. 6.
[3] Rec. Doc. 9.
[4] Rec. Doc. 12.

1

filing complaints of sexual harassment, gender, and wage discrimination. Wallace claims that as a direct result of filing her complaints, she has have been subjected to endless retaliatory actions at the hands of Settoon, Pregeant, and Dr. Antoinette Phillips.

After receiving her right to sue letter from U.S. Department of Justice, Wallace filed the pending lawsuit against Southeastern and the Board asserting Title VII claims for discrimination and retaliation and EPA claims. The Board contends that venue is improper in the Middle District in light of Title VII's specific venue provision that requires such actions be brought in the district where the alleged discriminatory actions occurred, which would be the Louisiana Eastern District. Therefore, the Board seeks either dismissal of Wallace's lawsuit under Rule 12(b)(3) of the Federal Rules of Civil Procedure, or, that her lawsuit be transferred to the Eastern District under 28 U.S.C. § 1404(a). The Board concedes that the Middle District is a court of proper venue over Wallace's EPA claim.

Wallace disagrees with the Board's position and submits that venue is, in fact, proper in the Middle District of Louisiana under Title VII's specific venue provision.

## II. STANDARD OF REVIEW

"Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) provide for dismissal or transfer of an action that has been brought in an improper venue."[5] "Upon objection to venue, the burden is on the plaintiff to establish that venue is proper, but the Court must accept as true all allegations in the complaint and resolve

---

[5] *Emelike v. L-3 Communications Corp.*, 2013 WL 1890289, at *1 (N.D.Tex. May 7, 2013)(citing *In re Atl. Marine Const. Co., Inc.*, 701 F.3d 736, 739 (5th Cir. 2012)).

2

all conflicts in favor of the plaintiff."[6] Under Rule 12(b)(3) the court may also consider "evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[7] "A trial court has broad discretion in ruling on motions to transfer venue, and its decision will be upheld absent an abuse of discretion."[8]

Congress has adopted a special venue provision for Title VII cases that has displaced the general venue provision set out in 28 U.S.C. § 1391. "For Title VII claims, venue is proper in only those districts which comport with 42 U.S.C. § 2000e-5(f)(3)."[9] In *Walters v. T.H. Hill*, this Court discussed the scope of the specialized venue rule:

> Section 2000e-5(f)(3) provides that venue is proper in all of the following: (1) any judicial district in the State in which the unlawful employment practice is alleged to have been committed; (2) the judicial district in which the employment records relevant to such practice are maintained and administered; and (3) the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. Additionally, if the respondent is not found within any of the above-mentioned districts, § 2000e-5(f)(3) provides that venue is proper in the judicial district in which the respondent has its principal office.[10]

"Aside from § 2000e-5(f)(3), the general venue provisions under 28 U.S.C. §§ 1404(a) and 1406 are also applicable and should be considered in Title VII cases."[11]

In the event a case is filed in the wrong district, then pursuant to 28 U.S.C. § 1406, the district court "shall dismiss, or if it be in the interest of justice, transfer such

---

[6] *Walters v. T.H. Hill Assoc., Inc.*, 2013 WL 5375488, at *1 (M.D.La. Sept. 19, 2013)(citing *Ginter ex rel. Ballard v. Belcher, Predergast & Laporte*, 536 F.3d 439, 448-49 (5th Cir. 2008)).
[7] *Ambracco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, at 238 (5th Cir. 2009)(quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)(citing *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).
[8] *Murungi v. Touro Infirmary*, 2011 WL 3206859, at *2 (W.D.La. June 29, 2011)(citing *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997); *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).
[9] *Walters v. T.H. Hill Assoc., Inc.*, 2013 WL 5375488, at *1 (M.D.La. Sept. 19, 2013)(citing *In re Horseshoe Ent.*, 337 F.3d 429 (5th Cir. 2003); *Allen v. U.S. Dept. of Homeland Sec.*, 514 F.App'x 421 (5th Cir. 2013)).
[10] *Id.*
[11] *Lozada v. Regal Ware, Inc.*, 2008 WL 4328011, at *2 (W.D.Tex. Sept. 15, 2008)(citing *Horseshoe Entm't*, 337 F.3d at 443).

3

case to any district or division in which it could have been brought."[12] "If transfer is warranted, courts can consider similar factors to those connected to a traditional motion to transfer pursuant to 28 U.S.C. § 1404(a)."[13]

"Section 1404(a) of Title 28 allows the Court in its discretion to transfer venue to another district or division, '[f]or the convenience of parties and witnesses, in the interest of justice,' where the action might have been brought."[14] "'When the movant demonstrates that the transferee venue is clearly more convenient' than the venue chosen by the plaintiff, 'it has shown good cause and the district court should grant the transfer.'"[15]

"In determining whether to transfer a case, the court must consider both private interest factors and public interest factors after first considering whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."[16] "These factors are 'not necessarily exhaustive or exclusive' and 'none can be said to be of dispositive weight.'"[17]

The private interest factors that a court must consider are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all

---

[12] 28 U.S.C. § 1406(a)(West 2015).
[13] *Walters v. T.H. Hill Associates, Inc.*, 2013 WL 5375488, at *2 (M.D.La. Sept. 19, 2013).
[14] *Norman v. H&E Equipment Services, Inc.*, 2015 WL 1281989, at *5 (M.D.La. Mar. 20, 2015)(quoting 28 U.S.C. §1404(a); *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001)).
[15] *Coleman v. Trican Well Service, L.P.*, 2015 WL 865153, at *1 (W.D.Tex. Feb. 27, 2015)(quoting *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008)).
[16] *Saurage v. Rave Reviews Cinemas, LLC*, 2008 WL 205342, at *2 (M.D.La. Jan. 23, 2008)(citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).
[17] *Vivint Louisiana, LLC v. City of Shreveport*, 2015 WL 1456216, at *3 (M.D.La. Mar. 23, 2015)(quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)(citing *Action Indus., Inc., v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

other practical problems that make trial of a case easy, expeditious and inexpensive."[18] The public factors to be considered are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[19] "The Fifth Circuit has explained that a plaintiff's choice of venue is not determinative in the analysis, but the plaintiff's choice of venue should be respected if the transferee venue is not clearly more convenient."[20]

## III. ANALYSIS

### A. Venue in the Middle District of Louisiana

Fundamentally, the parties disagree about how the first prong of § 2000e-5(f)(3)(1) should be interpreted. This provision states that venue is appropriate in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." On the one hand, the Board argues that venue is improper in the Middle District because all of the alleged acts of discrimination and retaliation occurred at Southeastern in Tangipahoa Parish, which falls within the Eastern District. The Board relies upon the Fifth Circuit decision *In re Horseshoe Entertainment* (hereinafter "*Horseshoe I*") to support its position. As a secondary argument, the Board challenges venue in the Middle District because the relevant employment records are physically located at Southeastern. In response, Wallace argues that considering the unlawful employment practice allegedly occurred at Southeastern in Hammond, Louisiana, if §

---

[18] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)(en banc).
[19] *Id.*
[20] *CSFB 1998-C2 TX Facilities, LLC v. Rector*, 2015 WL 1003045, at *6 (Mar. 5, 2015)(citing *Volkswagen II*, 545 F.3d at 314-15 (5th Cir. 2008)(en banc)).

5

2000e-5(f)(3) is given a broad interpretation, then venue should be proper in any judicial district in Louisiana for her Title VII claims, including the Middle District. Wallace further contends that the Board's reliance on *Horseshoe I* is misplaced. For the following reasons, the Court finds that venue is proper in the Middle District.

The Court agrees with Wallace's argument that the Board has erroneously relied upon *Horseshoe I*.[21] In *Horseshoe I*, the Fifth Circuit expressly found that the district court had erred by interpreting the specialized venue statute broadly, so that venue in Title VII cases would be proper in any jurisdiction within the state in which the alleged discriminatory act had occurred.[22] Rather, the *Horseshoe I* court reasoned that the Congressional intent behind the specialized venue provision required that employment discrimination controversies should be litigated in a judicial district that had "direct and immediate" connection with the parties, events, and evidence giving rise to the cause of action. Approximately one year later in *Horseshoe II*, the Fifth Circuit vacated its opinion in *Horseshoe I*, and, in so doing, declined to address the breadth of § 2000e-5(f)(3).[23] In the wake of *Horseshoe II*, several district courts within the Fifth Circuit, including the Middle District, have elected to construe the statute broadly.[24]

---

[21] *In re Horseshoe Entertainment*, 305 F.3d 354 (5th Cir. 2002)(opinion superseded by *In re Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003)).
[22] *Id.* at 359.
[23] *In re Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003). Instead, the Fifth Circuit assumed without deciding that a broad reading could be applied to this specialized venue statute. *Id.*, at 435.
[24] See, *Coleman v. Trican Well Service, L.P.*, 2015 WL 865153, at *2 (W.D.Tex. Feb. 27, 2015)("Pursuant to Title VII's venue provision, venue is proper in any district in the state of Texas because the unlawful employment practices—discrimination and retaliation—occurred in Texas."); *Chapman v. Dell, Inc.*, 2009 WL 1024635, at *2 (W.D.Tex. April 15, 2009)("Under the plain language of Title VII, then, venue is proper in any district in Texas."); *Yett v. Peters*, 2008 WL 177873, at *2 (E.D.Tex. Jan. 18, 2008)("While the Fifth Circuit has expressed some concern with such a broad reading of the statute [42 U.S.C. § 2000e-(f)(h)(5)], there is no authority holding that it should not be read as it is written-broadly."); *Puenta v. Ridge*, 2005 WL 1653017, at *2 (S.D.Tex. July 6, 2005)("the statute [42 U.S.C. § 2000e-(f)(h)(5)] clearly provides that a Title VII suit may be brought in any judicial district in the state in which the unlawful employment practice is alleged to have been committed."); *E.E.O.C. v. Jack of All Trades Personnel Services, Inc.*, 2004 WL 1217943, at *2 (N.D.Tex. June 1, 2004).

In *Walters v. T.H.*, the plaintiff brought a Title VII claim against his employer in the Middle District.[25] The defendant filed a motion to dismiss pursuant to Rule 12(b)(3), or, in the alternative, an order transferring the case to the Southern District of Texas. In conducting its analysis of Title VII's specific venue provision, the *Walters* court found that none of the alleged unlawful employment practice occurred in Louisiana.[26] Instead all of the discriminatory activity, such as plaintiff's interview and the hiring decision, occurred in Texas.[27] Ultimately, the *Walters* court held that the plaintiff could not satisfy the first prong of § 2000e-5(f)(3) for venue to be sufficient in "any Louisiana judicial district."[28]

In light of the *Walters* decision and a lack of controlling Fifth Circuit precedent holding that a narrow construction of the first prong of § 2000e-5(f)(3) is required, the Court finds venue is appropriate in any district in Louisiana because the unlawful employment practices occurred here. Since venue is proper in any judicial district in Louisiana, it is *a fortiori* proper in the Middle District. Hence, dismissal of Wallace's lawsuit is not warranted.

Having found venue to be proper in the Middle District, the Court turns its attention to whether this action should be transferred to the Eastern District pursuant to 28 U.S.C. § 1404.

---

[25] *Walters v. T.H. Hill Assoc., Inc.*, 2013 WL 5375488 (M.D.La. Sept. 19, 2013).
[26] *Id.* at *2.
[27] *Id.*
[28] *Id.*

7

**B. Should this Lawsuit be Transferred to the Eastern District?**

Pursuant to the § 1404(a) framework, the Court must first determine whether this lawsuit could have been brought in the Eastern District. For those reasons previously stated herein, the Court finds that Wallace's Title VII claims could have been brought in the Eastern District.

Unlike Wallace's Title VII claims, there is no special venue provision governing her EPA claims. Therefore, the general venue statute, 28 U.S.C. § 1391, applies, which establishes venue in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[29]

In her *Complaint*, the Plaintiff has identified two Louisiana Defendants in her lawsuit: Southeastern, which is headquartered in Hammond, and the Board of Supervisors for the University of Louisiana System, which is domiciled in Baton Rouge.[30] Because all of the Defendants are residents of the State of Louisiana, and Southeastern falls within the Eastern District, the Court finds that venue over Wallace's EPA claims would be proper in the transferee court.

Based upon these findings, the Court will now determine whether the Board has carried its burden of showing that the Eastern District is a more convenient forum by examining each of the applicable private and public factors previously discussed.

---

[29] 28 U.S.C. § 1391(b)(West 2015).
[30] Rec. Doc. 1, p. 2.

1. Private Interest Factors

    a. *Relative Ease of Access to Sources of Proof*

Turning to private interest factors, the first factor the Court must consider is the relative ease of access to sources of proof. "Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. This factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."[31]

The Board claims that the relevant documents and sources of proof are located at Southeastern's campus in Hammond. Specifically, the Department of General Business' evaluation instrument, student evaluations and emails, salary-related documents, EEOC related records and investigation,[32] and Southeastern's policies and Faculty Handbook are all located at Southeastern in Hammond. The Board also points to the fact that Southeastern is the situs of the alleged acts of discrimination and retaliation, as well as the alleged cooling of relationships between the Plaintiff and her colleagues.

In response, the Plaintiff disputes the Board's claims that all of the relevant documents are located in Hammond, arguing that all records related to the implementation and monitoring of the retaliation policies are maintained at the Board's headquarters in Baton Rouge, and that the consent decree compelling adherence to these policies was also issued here. Additionally, Plaintiff's physicians and her medical records are located in the Middle District.

---
[31] *ACQIS LLC v. EMC Corp.*, 2014 WL 5485900, at *2 (E.D.Tex. Sept. 10, 2014).
[32] Rec. Doc. 4-2, p. 1. (Victor E. "Gene" Pregeant's Affidavit).

The Court finds that this factor weighs slightly in favor of the Board. While both parties have identified evidence located in both districts, the majority of the evidence, as well as the situs of the alleged discrimination and retaliation, is located in the Eastern District. Notably, pertinent employment records, including evaluations and salary-related documents, are located at Southeastern. In *Horseshoe I*, the Fifth Circuit explained that, "[w]here relevant employments records are maintained and administered is expressly stated as a venue factor in the special venue statute and should be weighed by a District Court in evaluating the 'interest of justice' aspect of the motion to transfer."[33] Thus, the Court finds that this factor lends further support to a possible transfer to the Eastern District.

### b. Availability of Compulsory Process

This factor considers the availability of the compulsory process to secure nonparty witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.[34] "The court gives more weight to specifically identified witnesses, and less weight to vague assertions that witnesses are likely to be found in a particular forum."[35] Rule 45 empowers courts with subpoena power to command the appearance of nonparty witnesses for depositions or trial "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."[36] "Current

---

[33] 337 F.3d 429, at 434.
[34] *Volkswagon II*, 545 F.3d at 315.
[35] *Eight One Two, LLC v. Purdue Pharma, L.P.*, 2014 WL 7740476, at *3 (N.D.Tex. May 16, 2014).
[36] Rule 45(c)(1)(West 2015).

employees of a party are considered to be willing witnesses whose testimony can be presented without reliance upon subpoena power, and their locations are not persuasive in the court's analysis of this factor."[37]

Notwithstanding the Plaintiff's physicians, all of the witnesses specifically identified by the parties are either employees or officers of Southeastern, which is located within approximately 48.2 miles from the Middle District Courthouse and 59.8 miles from the courthouse in the Eastern District.[38] Therefore, neither Court's subpoena power will be impeded in this lawsuit. Consequently, the Court finds this weighs equally for and against transfer.

### c. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. The Fifth Circuit in *In re Volkswagen I* established a "100-mile" rule or threshold, which provides: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled."[39] The Fifth Circuit further reasoned that "[a]dditional distance means additional travel time; additional travel time increase the probability for meal and lodging expenses; and additional travel time with overnight stay's increases the time which these fact witnesses must be away from their regular employment."[40] Subsequently, in *In re Radmax, Ltd.*, the Fifth Circuit clarified that with its 100 mile rule, it did not "imply … that a transfer

---

[37] *Eight One Two, LLC v. Purdue Pharma L.P.* 2014 WL 7740476, at *3 (N.D.Tex. May 16, 2015)(citing *Rosemond v. United Airlines, Inc.,* 2014 WL 1338690, *3 (S.D.Tex.2014); *Net Navigation Systems, LLC v. Cisco Systems, Inc.,* 2012 WL 7827544, *4 (E.D.Tex.2012)).
[38] Wallace presented in her argument the distance between Southeastern and the respective courthouses. The Board did not dispute these distances in any of its memoranda.
[39] *In re Volkswagen of America, Inc.*, 545 F.3d 304, at 317 (quoting *In re Volkswagen I*, 371 F.3d at 204-05 (5th Cir. 2004)).
[40] *Id.*

within 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles."[41]

The two courthouses at issue are approximately 81 miles apart.[42] Although the 100 mile threshold is not satisfied in this instance, the Court must still consider the costs to the witnesses. The Board essentially argues that it would be "unfair" to require nonparty witnesses, "who did not ask to be involved in this lawsuit, to have to travel outside of the Eastern District where they work and/or live) to be part of this lawsuit."[43] In response, Wallace provides specific distances for the four named Southeastern employee/officer-witnesses from Southeastern and their respective residences to both courthouses.[44]

As previously discussed, the distance from Southeastern to the Middle District courthouse is approximately 48.2 miles, whereas it is approximately 59.8 miles between the university and the Eastern District courthouse. Of the four witnesses, three live within the Eastern District's province: two--Dean Settoon and Dr. Honoree--live in Hammond, and one—Dr. Phillips--lives in Independence. Nonetheless, for each of these witnesses, it is a shorter distance for them to travel from their homes to the courthouse in the Middle District as opposed to the courthouse in New Orleans.[45] As for

---

[41] *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).
[42] Again, Plaintiff offered this distance which was unrefuted by the Board.
[43] Rec. Doc. 9, p. 4.
[44] In her *Surreply*, Wallace stated that "for decorum's sake, Plaintiff will refrain from producing these individual's home addresses in this memorandum" and that she retrieved the distances from Google Maps available on-line. She further noted that she would be willing to produce these residential addresses to the Court if requested. Rec. Doc. 12, p. 6.
[45] The distance from Dean Settoon's residence to the Middle District courthouse is 49.6 miles, versus the 61.6 miles from his home to the Eastern District courthouse. Dr. Phillips' residence is 56.3 miles from the Middle District courthouse, and 68.4 miles from the Eastern District courthouse. It is 47.3 miles from Dr.

the one remaining witness, Dr. Rusty Juban, like the Plaintiff, he actually resides in the Middle District. Additionally, Plaintiff's treating physicians are located within the Middle District.

Considering the lesser distances to be traveled by the Southeastern witnesses from their homes or the university to the courthouse in the Middle District, and the fact that Plaintiff, her treating physicians, and Dr. Rusty Juban all reside in the Middle District, the Court concludes that this factor weighs against transfer.

### d. All other practical problems

The Court must consider all other practical problems that make a trial of this case easy, expeditious, and inexpensive. The Board argues that the locus of operative facts, specifically the location of witnesses and potential evidence and the allegations in the Complaint, require transfer. While the Court agrees that more of the evidence and certain witnesses in this case are located in the Eastern District, this does not necessarily mean that transferring this case to the Eastern District will make a trial any easier, more expeditious, or less expensive. As previously discussed, the distance that the identified witnesses will have to travel to the courthouse in the Middle District is shorter than the travel required to the Eastern District. This factor will place less of a travel burden upon these witnesses allowing this case to move more quickly. These shorter distances will also equate to the parties having to pay less in reimbursement costs to these witnesses for their travel expenses. Accordingly, the Court finds that this factor weighs against transfer.

---

Honoree's residence to the Middle District courthouse, and 55.9 miles to the courthouse in the Eastern District. Rec. Doc. 12, p. 6.

2. Public Interest Factors

Of the public interest factors, the Board contends that two weigh in favor of transfer.[46] The Board argues that a transfer will alleviate congestion on the Middle District court system because the Eastern District has more judges among whom cases can be distributed. According to the Board, the number of civil cases handled by each district court judge in the Middle District, 276 per judge, exceeds the number their counterparts handle in the Eastern District, 233 per judge.[47] Wallace contends that the data relied upon by the Board may not be accurate since it relied upon statistics collected for the fiscal year ending on September 30, 2014, and fails to account for the recent commission of an additional district court judge to the Middle District. The Court finds that merely comparing the number of judges between the district courts and the number of civil cases each judge handles within each district is too speculative to establish administrative difficulties from relative court congestion. Moreover, the Plaintiff makes a valid point that the data relied upon by the Board is, in all probability, inaccurate due to the recent commission of another district court judge in the Middle District. Accordingly, the Court finds that consideration of this factor neither supports nor countervails transfer.

The Board also argues that the local interest in adjudicating disputes supports a transfer. "It is well-established that the local interest in deciding local issues at home

---

[46] The Plaintiff agrees that the remaining two public interest factors, familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of law, are inapplicable here.

[47] The Board cites to United States Courts website for these statistics: http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-september-2014.pfd#page=29.

14

favors transfer to a venue that will vindicate such an interest."[48] The crux of the Board's argument is that the residents of the Eastern District have a greater interest in determining whether the alleged wrongdoing occurred, and should serve as members of the jury selected to hear this case.[49] The Court finds that the Board overlooks the simple fact that it is possible for multiple districts to have a localized interest in a single cause of action, particularly when the districts are geographically adjacent and the communities regularly travel between them.[50]

The Court takes judicial notice of the fact that Tangipahoa Parish, which is in the Eastern District, and Livingston Parish, which is in the Middle District, are geographically adjacent.[51] While Southeastern is located in the Eastern District, its influence is felt in both the Eastern and Middle Districts, considering students and employees hale from both districts and are equally affected by the enforcement of non-discriminatory policies. Additionally, as Wallace points out, Southeastern also operates satellite campuses, including its nursing school, in the Middle District, which likely employ and enroll students from these two districts. The Board's argument that a jury must be comprised of residents of Tangipahoa Parish because that is where Southeastern is located is unavailing. The Supreme Court has noted that "[j]ury duty is

---

[48] *Travelers Cas. and Sur. Co. of America v. University Facilities, Inc.*, 2011 WL 197897, at *6 (E.D.La. Jan. 20, 2011)(citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981).

[49] It is the Board's position that Wallace's "allegations concern conduct more important to a jury from the Eastern District than the Middle District," and it "cannot be said that a jury selected from the Middle District would constitute a body 'truly representative' of the community in which [Southeastern] is located." Rec. Doc. 9, p. 7.

[50] See, *LeDoux v. Isle of Capri Casinos, Inc.*, 218 F.Supp.2d 835, 838 (E.D.Tex. 2002)(district court found that people of the Western District of Louisiana and the Eastern District of Texas had a shared interest in adjudicating dispute involving injury at a casino due to close geographic proximity of districts and where movant had customers from both communities).

[51] Rule 201(b) of the Federal Rules of Evidence provides: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned." (West 2015).

a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."[52]  As noted herein, there are individuals in the communities of both the Middle and Eastern Districts of Louisiana with employment or educational connections to Southeastern.  Since residents of both districts will have a localized interest in the resolution of this dispute, it would not be unfair to impose jury duty upon the citizens of either community.  Accordingly, the Court finds that this factor is neutral.

Having considered the foregoing factors, the Court finds that the Board has failed to demonstrate that the Eastern District is "clearly more convenient" than the Middle District to justify a transfer, and its *motion* shall be denied.

## IV. CONCLUSION

Wherefore, the Board of Supervisors for the University of Louisiana System's *Motion to Dismiss for Improper Venue*[53] is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on April 30, 2015.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).
[53] Rec. Doc. 4.