## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DAWN WALLACE                                                    CIVIL ACTION

VERSUS                                                         14-657-SDD-RLB

THE BOARD OF SUPERVISORS FOR
THE UNIVERSITY OF LOUISIANA SYSTEM
(SOUTHEASTERN LOUISIANA UNIVERSITY)

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendant Board of Supervisors for the University of Louisiana System (Southeastern

Louisiana University)("Defendant").    Plaintiff Dawn Wallace ("Plaintiff") has filed an

*Opposition*[2] to which the Defendant filed a *Reply*.[3]   For the following reasons, the Court

finds that material issues of fact are present in this case, and summary judgment is

improper.

### I.    FACTUAL BACKGROUND

Plaintiff is a tenured professor currently teaching at Southeastern Louisiana

University (SLU) in Hammond, Louisiana.[4]  In August of 2000, Plaintiff was appointed to

a tenure-track position in SLU's College of Business and assigned to the Department of

---

[1] Rec. Doc. No. 36.
[2] Rec. Doc. No. 47.
[3] Rec. Doc. No. 50.
[4] Rec. Doc. No. 1, ¶II.1.
36366

General Business.[5]  Plaintiff alleges that, subsequent to her hiring, Dr. Yu Hsing, head of Plaintiff's department, commented to Plaintiff that he believed her starting salary to be satisfactory for a single woman and that, should Plaintiff marry, her future spouse's salary combined with her salary would be a "great improvement."[6]

Plaintiff contends that, at the time of her hire, along with the skills, education and knowledge generally required, all tenure-track faculty in the College of Business were also required to hold a terminal degree (such as a Ph.D.) or have "All But Dissertation" completed status.[7]  Plaintiff alleges that her credentials include:  an undergraduate degree in Accounting with a minor in Management from SLU; a MBA from SLU; a Ph.D. in Educational Leadership and Research from Louisiana State University (LSU); private sector experience five years prior to her appointment; and eighteen additional hours of graduate-level Management courses.[8]

In June of 2005, Plaintiff attended a business meeting in Germany with the Dean of the College of Business, Randy Settoon ("Settoon"), during which Plaintiff contends Settoon propositioned her.  Plaintiff alleges that, when she declined this advance, Settoon responded:  "So you mean that I don't get to see you naked until after you get tenure?"[9]

In August of 2005, Plaintiff became the Director of Graduate Business Programs which was a twelve-month administrative position.  Plaintiff claims that, when she returned to her faculty position, a nine-month position, she did not receive the same compensation as male colleagues.  She also claims that this was in contravention of

---

[5] *Id.* at ¶IV.7.
[6] *Id.* at ¶IV.8.
[7] *Id.* at ¶IV.9.
[8] *Id.* at ¶IV.10.
[9] *Id.* at ¶IV.11.
36366

SLU's change-in-status policy which requires that "[a]ny employee whose status changes from a twelve-month to a nine-month salary basis shall be offered a salary consistent with similar positions at the institution, at similar SREB institutions, or as approved by the Board."[10]   Plaintiff contends this male/female distinction in faculty salary constitutes gender discrimination.[11]   Plaintiff further claims that she was subsequently encouraged by Settoon to take additional business classes to become AACSB[12] academically qualified.   Thus, Plaintiff took additional hours of Management classes which she claims qualified her to teach Management under the AACSB guidelines.[13]

Plaintiff alleges that the College of Business was in the process of being reorganized which would result in the Department of General Business being dissolved; thus, plans were made for her transfer to the Management Department.   Plaintiff claims that Settoon promised her a raise commensurate with her male colleagues upon her transfer to Management, as she had complied with his request to complete Management coursework.[14]   Plaintiff received tenure in 2006 and points out that her tenure recommendation noted her "professionalism, initiative, and collegiality."[15]

After she received tenure, Plaintiff claims that Settoon assigned her additional duties and committee positions in the College of Business.[16]   Plaintiff also claims that she

---

[10] *Id.* at ¶IV.12.
[11] *Id.* at ¶IV.13.
[12] AACSB is the Association to Advance Collegiate Schools of Business, a Southeastern accrediting organization.  *Id.* at ¶IV.14.
[13] *Id.*
[14] *Id.* at ¶IV.15.
[15] *Id.* at ¶IV.16.
[16] These duties and positions included:  Chair of Business Week, Co-chair of Ethics, creator of College of Business brochure, Faculty Advisor for student organization, member of College of Business Reorganization Committee, Tenure and Promotion Guidelines Committee, Tenure and Promotion of Colleagues Committee, American Heart Association Chair, Curriculum Committee, and College Events and Social Committee. *Id.* at ¶IV.17.
36366

taught an overload course and an additional course with no compensation.[17]

In October of 2008, Plaintiff alleges Settoon resumed his pursuit of her after separating from his wife.  Settoon allegedly again promised Plaintiff increased pay upon joining the Management Department and, allegedly, also suggested that she could eventually become the Assistant Dean.  Plaintiff contends she agreed to date Settoon, and this relationship lasted two months.[18]  When Plaintiff broke off this relationship with Settoon in December of 2008, Plaintiff claims that Settoon's attitude toward her quickly changed, and she was removed from extra duties and committee positions.[19]

In August of 2009, the reorganization of the College of Business took place, which dissolved and split the College of General Business faculty into the fields of Management and Economics.  Plaintiff was transferred to the Management Department as planned, but she claims her salary was not adjusted to the levels of the male Management Department professors as had been promised.  Further, Plaintiff contends she has not been allowed to teach upper level Management courses although she is qualified to do so based on the 18 extra hours of coursework performed under AACSB guidelines.[20]

In May of 2010, Plaintiff hand-delivered a sexual harassment and discrimination complaint to Gene Pregeant ("Pregeant"), the EEO Compliance Officer for SLU.  Plaintiff contends she described Settoon's behavior beginning on the business trip to Germany and the subsequent actions taken.[21]  Plaintiff contends that, on June 15, 2010, Pregeant addressed her complaint and advised that Settoon denied making any sexual advances

---

[17] *Id.*
[18] *Id.* at ¶IV.18.
[19] *Id.* at ¶IV.19.
[20] *Id.* at ¶IV.21.
[21] *Id.* at ¶IV.22.
36366

in Germany, which ended the inquiry.  Pregeant allegedly advised Plaintiff that her complaint was without merit singularly based on Settoon's denial.  Plaintiff claims the conversation ended there, and Pregeant offered Plaintiff no further assistance or advice regarding options of raising her concerns to the EEOC.[22]

During this time frame, Settoon called a meeting of all Department Heads of the College of Business and allegedly informed all attendees of Plaintiff's discrimination complaint.  Plaintiff contends this violated published SLU policies regarding the confidentiality of harassment complaints and that such action amounted to retaliation causing Plaintiff embarrassment, humiliation, and isolation.  Further, Plaintiff contends Settoon's comments also encouraged retaliation against her by others in the department.[23]  Plaintiff claims that her Department Head, Dr. Antoinette Phillips ("Phillips), was in attendance at this meeting.[24]

Realizing that Settoon never intended to raise her pay, Plaintiff went back to Pregeant in August of 2010 and raised concerns about possible violations of the Equal Pay Act (EPA) and wage discrimination.  Pregeant again found no merit to Plaintiff's concerns and provided her with a legal interpretation of the EPA that Plaintiff alleges was intended to dissuade her from pursuing her rights.[25]

Following Settoon's department meeting, Plaintiff contends she began experiencing retaliatory actions by Phillips along with increased retaliatory actions by Settoon.[26]  On December 16, 2010, Plaintiff filed a charge with the EEOC alleging wage

---

[22] *Id.* at ¶IV.23.
[23] *Id.* at ¶IV.24.
[24] *Id.* at ¶IV.26.
[25] *Id.* at ¶IV.25.
[26] *Id.* at ¶IV.27.
36366

discrimination on the basis of gender.[27]  Plaintiff contends that these acts of retaliation by Phillips, Settoon, and Pregeant continued, and further, her College of Business colleagues became distant and unfriendly towards her as a result of SLU failing to uphold its duty to provide confidentiality in Plaintiff's complaint.[28]  Plaintiff claims she suffered, *inter alia*, the following acts of retaliation as a result of her complaint:  (1) she was humiliated and undermined by Dr. Phillips changing the grade of one of her failing students without Plaintiff's knowledge or consent; (2) Dr. Phillips became highly confrontational with Plaintiff regarding routine student complaints when she had previously been supported regarding same; (3) Plaintiff received a 62.9% evaluation score after filing her charge when she had previously received scores of 92.50% and 100%; (4) Plaintiff was suddenly barred from setting her own course schedule when she had previously been allowed to do so; (5) Plaintiff was assigned to teach during "undesirable times of the day"; (6)  Plaintiff was required to provide reports on short notice and under extreme pressure; (7) Plaintiff was required to teach in a volunteer program to prevent her from teaching Continuing Education programs that would enhance her pay; and (8) Plaintiff was not allowed to list summer courses as 100% online and was refused the opportunity to teach upper level courses.[29]  When Plaintiff approached Settoon – in his role as Dean – regarding some of Phillips' actions, she claims Settoon told her that Phillips did not like her.[30]  In the summer of 2011, Plaintiff again complained to Pregeant about the actions she deemed retaliatory, and she was again allegedly met with no

---

[27] *Id.* at ¶IV.28.
[28] *Id.* at ¶IV.29.
[29] *Id.* at ¶IV.30.
[30] *Id.* at ¶IV.31.

36366

investigation and no assistance.[31]  Plaintiff filed an additional charge of retaliation with the EEOC on December 16, 2011.[32]

While Plaintiff remains employed by SLU, she contends the retaliation is presently ongoing.  Although Plaintiff claims she is qualified to teach upper level Management courses, she contends she is only allowed to teach lower level courses since filing her EEOC complaint, which renders her salary amongst the lowest in the College of Business. Plaintiff also alleges she is not being properly evaluated allegedly due to her pending EEOC charges.[33]  Further, Plaintiff contends that, as a result of these actions, her reputation with students and colleagues has suffered along with her physical and mental well-being.  Plaintiff receives treatment from a therapist to address these issues and alleges physical symptoms related to her stress that require medical monitoring and treatment.[34]

Upon receiving her Right to Sue letter from the EEOC, Plaintiff filed this lawsuit alleging violations of the Equal Pay Act and the Lilly Ledbetter Fair Pay Act of 2009, gender discrimination in violation of Title VII of the Civil Rights Act of 1964, and retaliation under Title VII and the EPA.  Plaintiff contends that the Management Department of the College of Business at SLU consists of an all-male faculty except for full professor Phyllis King and Plaintiff, who are the lowest paid professors in this department.[35]  Plaintiff further contends that other departments at SLU have disparities in pay reflecting a systemic

---

[31] *Id.* at ¶IV.32.  Curiously, Plaintiff alleges that, after SLU was contacted by her EEOC investigator Hoyt Baugh regarding her low 62.95% score, she received a 95.00% score from Phillips on the next evaluation. *Id.* at ¶IV.33.
[32] *Id.* at ¶IV.34.
[33] *Id.* at ¶IV.35 & 36.
[34] *Id.* at ¶IV.37.
[35] *Id.* at ¶V.42.
36366

pattern of denying female professors equal pay.[36]

Defendant has moved for summary judgment arguing that Plaintiff fails to make a *prima facie* case for any cause of action asserted and fails to present genuine disputes of material fact that would preclude summary judgment.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[38]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[39]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[40]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[41]

---

[36] *Id.* at ¶V.43.

[37] Fed. R. Civ. P. 56(a).

[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[39] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[40] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

[41] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

36366

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[42]  All reasonable factual inferences are drawn in favor of the nonmoving party.[43]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[44]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[45]

## B.  The Equal Pay Act ("EPA")[46]

The Equal Pay Act prohibits discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[47]  "[I]n order to establish a claim under the Equal Pay Act, the plaintiff must show:  (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than

---

[42] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[43] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[44] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[45] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[46] 29 U.S.C. §206 (d)(1).
[47] *Id.*
36366

members of the opposite sex."[48]  To establish that her male counterparts engage in "equal work," the plaintiff need only prove that the "skill, effort and responsibility" required in the performance of the jobs is "substantially equal."[49]  "The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated."[50]

Once a plaintiff has shown that she is paid less than an employee of the opposite sex for substantially equal work, the burden of proof shifts to the employer to show that the differential is justified under one of the Act's four exceptions.[51]  The Equal Pay Act provides exceptions for disparate wage payments "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any other factor other than sex."[52]  These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion."[53]  Even a legitimate, non-discriminatory reason for the pay differential will not justify summary judgment where a plaintiff is able to show that the defendant's proffered reasons are a pretext for gender discrimination.[54]  Indeed, "[b]ecause the exceptions to the Equal Pay Act are to be narrowly construed,[55] summary judgment is

---

[48] *Jones v. Flagship Int'l*, 793 F.2d 714, 722–723 (5th Cir.1986).
[49] *Id.* (citing *Pearce v. Wichita County, City of Witchita Falls, Texas Hospital Bd.*, 590 F.2d 128, 133 (5th Cir.1979)).
[50] *Id.*
[51] *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983).
[52] 29 U.S.C. § 206(d)(1).
[53] *Plemer*, 713 F.2d at 1136.
[54] *Id.*
[55] *Perales v. American Retirement Corporation*, No. Civ.A.SA-04-CA-0928, 2005 WL 2367772, at *3 (W.D. Tex. Sept. 26, 2005)(citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 207 (1974)("The Act is broadly remedial and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1047 (5th Cir.), *cert. denied,* 414 U.S. 822 (1973)).
36366

proper only if the defense is so clearly established that no rational jury could find to the contrary."[56]

Defendant contends that Plaintiff's alleged male comparators have different educational backgrounds and experience which justifies the salary differentials and the assigned classes to teach.   However, Plaintiff argues that these "manufactured" distinctions did not exist in the "normal course of operations" at SLU.[57]  For example, Dr. Phillips' suggested that, considering accreditation standards, Plaintiff is qualified to teach any Management classes, including upper level classes.[58]  Plaintiff further contends that the accreditation services treats professors with terminal degrees in Management equally with professors – like Plaintiff – with an additional 18 hours in post graduate management classes with regard to teaching responsibilities.  Moreover, Plaintiff has attested that she was advised that her salary would be raised to her male counterparts if she completed the 18 hours of post-graduate work in Management.[59]  Plaintiff also claims that she previously taught upper level Management classes, and Defendant has purposely limited her teaching to lower level classes in order to bolster this defense to her claim.  The Court finds that there are clearly genuinely disputed material facts as to Plaintiff's satisfaction of this requirement.

In the present case, it is undisputed that Defendant is subject to the Equal Pay Act, and it appears from the record before the Court that Plaintiff was paid less than some (if not all) male counterparts.  Whether Plaintiff performed work requiring equal skill effort

---

[56] *Id.* (citing *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir.1998) (citing *EEOC v. State of Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir.1989))).
[57] Rec. Doc. No. 47, p. 2.
[58] Deposition of Dr. Antoinette Phillips, Rec. Doc. No. 47-3, pp. 26-27.
[59] Affidavit of Dawn Wallace, Rec. Doc. No. 47-2.
36366

and responsibility as those male counterparts is highly disputed.   Having carefully reviewed the record, the Court finds that there are genuine issues of fact regarding this element of Plaintiff's *prima facie* case regarding her Equal Pay Act claims.   As noted by a Southern District of Texas Court, "[u]ltimately, whether two jobs require equal skill, effort, and responsibility, and are performed under similar working conditions is a factual determination.   Given the fact intensive nature of the inquiry, summary judgment will often be inappropriate."[60]   The Court finds that these matters are best presented to a jury for resolution.

Additionally, the Court finds that there are genuine issues of material fact as to whether the reasons given for the disparate wage treatment—such as the other employees' degrees and educational experience—are pretextual are issues of credibility and fact best reserved for a jury.[61]   Because the Court finds that Plaintiff has created genuine issues of material fact regarding whether Defendant's decision to pay her male counterparts more was not motivated solely by gender-neutral factors, the motion for summary judgment on her Equal Pay Act claims is denied.   The Court simply cannot find from the present record that the defense is so clearly established that no rational jury could find to the contrary.

---

[60] *Wojciechowski v. National Oilwell Varco, L.P.* 763 F.Supp.2d 832, 849 (S.D.Tex. 2011) (internal citations omitted).
[61] *Perales.*, 2005 WL 2367772 at *6 ("[The] credibility and weight to be given to defendant's explanation for the pay differential in this case is a matter properly left to the consideration of the jury."); *Wojciechowski*, 763 F.Supp.2d at 849.
36366

### C. Title VII Claims[62]

1. <u>Gender Discrimination</u>

Plaintiff has also asserted a Title VII claim of gender discrimination in compensation.  Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color... ."[63]  A claim of employment discrimination can be proven through direct or circumstantial evidence.[64] Direct evidence is evidence that proves the fact of discriminatory animus without inference or presumption.[65]   To survive summary judgment in an employment discrimination case in the absence of direct evidence of discrimination, the plaintiff must demonstrate, pursuant to the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, that: (1) she was in a protected class; (2) she was qualified for the position; (3) she suffered adverse employment action; and (4) she was treated less favorably than similarly situated employees.[66]   The Supreme Court noted that courts should apply this framework flexibly, as "the facts necessarily will vary in Title VII cases."[67] Moreover, "to establish a prima facie case, a plaintiff need only make a very minimal

---

[62] 42 U.S.C. § 2000e.

[63] 42 U.S.C. § 2000e–2(a)(1).

[64] *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[65] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[66] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (applying the *McDonnell Douglas* framework to Title VII claims).

[67] *Id.* at 802 n.13; *see also Intern. Broth. of Teamsters*, 431 U.S. at 358 (recognizing that the importance of *McDonnell Douglas* lies "not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discrimination criterion illegal under the [Civil Rights] Act"); *Barnes*, 778 F.2d at 1099 ("The *McDonnell Douglas* rule was intended to be a flexible one.").

36366

showing."[68]

If the plaintiff can establish these elements, the burden will shift to the defendant to show a legitimate, non-discriminatory purpose for the adverse employment action.[69] The defendant must point to admissible evidence in the record, but the burden is one of production, not persuasion.[70] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[71] The employer may succeed at this stage by proving that it would have taken the same action even had it not considered the unlawful factor.[72] If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[73]

In the context of a gender discrimination in compensation case, a plaintiff must show that she was a member of a protected class and that she was paid less than a non-member for work requiring substantially the same responsibility.[74] If Plaintiff sets forth a *prima facie* case, the case is analyzed under the *McDonnell Douglas* framework outlined above.[75]

For the same reasons the Court finds fact issues as to whether Plaintiff performed

---

[68] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).
[69] *Id.*
[70] *Russell*, 235 F.3d at 222.
[71] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").
[72] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).
[73] *Id.*
[74] *Taylor v. United Parcel Service, Inc.,* 554 F.3d 510, 522–523 (5th Cir. 2008).
[75] *Id.*
36366

work requiring equal skill, effort, and responsibility as her male counterparts under the EPA, the Court finds that there is a fact issue under Title VII as to whether Plaintiff was qualified for the positions held by her male counterparts and whether her work required substantially similar responsibility.  Indeed, the same evidence will probably address both issues.

The Court finds that Plaintiff has satisfied her burden under this framework of establishing that she has suffered an adverse employment action as well.  In the context of discrimination claims, "adverse employment reactions" are defined by the Fifth Circuit as "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting and compensating."[76]  There is no question that the Defendant's alleged failure to give Plaintiff a raise commensurate to her male counterparts constitutes an adverse employment action in the context of a discrimination in compensation case.  This is a properly raised issue of material fact, and whether the Defendant's neutral explanations for the disparate treatment are pretextual is a matter of credibility best reserved for the jury.

2.  Retaliation

As discussed above, Plaintiff has also asserted a retaliation claim under Title VII and the EPA based on a myriad of actions she alleges to have been in retaliation for her rejection of Settoon's alleged sexual advances and for her discrimination complaints to Pregeant and the EEOC.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) her employer

---

[76] *Coffman v. Alvin Community College*, 642 F. Appx. 472, 477 (5th Cir. 2016) ; *see also Pierce v. Texas Department of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir.1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").
36366

took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[77]  The "adverse employment action" must be an "ultimate employment decision," such as hiring, granting leave, discharging, promoting, or compensating.[78]

There is no dispute that Plaintiff engaged in protected activity; however, Defendant contends Plaintiff has failed to establish an adverse employment action and causation. In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged employment action "materially adverse."[79]  An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[80]  An employment action is not materially adverse if it amounts only to "petty slights or minor annoyances that often take place at work and that all employees experience."[81]

While the Court agrees that not all of the allegations Plaintiff asserts as retaliatory satisfy this standard, some do, particularly the failure to raise her pay commensurate to her male colleagues as allegedly promised by the head of her department.  Moreover, while standing alone, some of the alleged actions might not constitute a "materially adverse" action; however, taken as a whole, the pattern of actions could arguably be interpreted as actions that would dissuade a reasonable employee from making a claim of discrimination.

---

[77] *Lowery v. Texas A&M University System*, 11 F.Supp.2d 895, 910 (S.D. Tex. 1998) (internal citations omitted).

[78] *Id.* (internal citations omitted).

[79] *Soublet v. Louisiana Tax Com'n*, 766 F.Supp.2d 723, 734 (E.D. La. 2011)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[80] *Id.*, quoting *Burlington*, 548 U.S. at 68 (citations and internal quotation marks omitted).

[81] *Id.*, quoting *Burlington*, 548 U.S. at 68.

36366

Defendant contends Plaintiff has suffered no adverse employment action for purposes of a retaliation case.  Plaintiff has alleged that she was promised a pay raise that would raise the level of her pay to that of her male colleagues if she met certain conditions.  The allegation is not that Plaintiff never received any raises; rather, she alleges she never received the promised raise, to which she was entitled, that would equalize her pay with her alleged male counterparts.  Further, there is evidence in the record from which a reasonable juror could find that the subsequent employment actions/inactions Plaintiff allegedly experienced were implemented in retaliation for Plaintiff's protected activities.  This is not a proper question to be resolved on summary judgment.  The Court finds that there are genuine issues of material facts on the issues of adverse employment action and causation.  The factual disputes and credibility determinations required to resolve them are within the province of the trier of fact.

### D.  Punitive/Liquidated Damages

Defendant maintains that punitive damages under Title VII and liquidated damages, which are punitive in nature, under the EPA are not available against a political subdivision.  Plaintiff concedes that punitive damages are not available against a political subdivision under Title VII; however, Plaintiff contends that liquidated damages under the EPA are available.  Because the Fifth Circuit has affirmed the award of liquidated damages under the EPA against a state university,[82] the Court will deny Defendant's motion for summary judgment on liquidated damages.

---

[82] *See Siler-Khodr v. University of Texas Health Science Center San Antonio*, 261 F.3d 542, 545 (5th Cir. 2001)(Fifth Circuit affirmed award of liquidated damages to plaintiff in the amount of $91,000 against university-defendant).
36366

III.    **CONCLUSION**

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[83] is

DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>December 6, 2016</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[83] Rec. Doc. No. 36.

36366